708 So.2d 1048 (1998)
STATE of Louisiana
v.
Tyrone HUNTLEY.
No. 97-K-0965.
Supreme Court of Louisiana.
March 13, 1998.
Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Susan E. Talbot, for Applicant.
Dwight Doskey, New Orleans, for Respondent.
*1049 PER CURIAM.[*]
Unwilling to sanction investigatory stops by police on every unsubstantiated tip they receive, the court of appeal in an unpublished opinion reversed the defendant's conviction and sentence for simple possession of cocaine in violation of La.R.S. 40:967 on grounds that only the police observation of the defendant in a high crime area gave rise to any suspicion of criminal conduct, and that factor, standing alone, simply was not sufficient to give rise to reasonable suspicion justifying an investigatory stop. However, in determining whether reasonable suspicion exists for an investigatory stop, a reviewing court must consider the circumstances known to the police collectively, not on a separate, individual basis. Viewing the officers' conduct in this light, we find that the totality of the circumstances known to the officers in this case gave them an objective and reasonable basis for briefly detaining the defendant in an encounter which led to the inadvertent disclosure of the evidence. We therefore reverse the judgment below.
According to the testimony presented at the hearing on defendant's motion to suppress the evidence and then at defendant's bench trial, on the morning of February 4, 1995, an unidentified woman approached Officers Richard Williams and Deron Demma, conducting a routine patrol in the St. Bernard Housing Project, and told them that a black male by the name of "Ronnie" was selling crack cocaine on that day in the project. The woman offered no details as to the transactions within the project but informed the officers that Ronnie normally wore a black New Orleans Saints starter jacket. The officers recorded the information and continued on patrol.
Williams and Demma entered a driveway in the 1400 block of Milton Street, an area known to them for its high incidence of drug trafficking. The officers saw three men standing together in the area; one of the men, the defendant, had on a black New Orleans Saints starter jacket. When the men noticed the officers in their marked patrol unit, they "appeared startled and they attempted to dis[perse]." The officers stopped the men, ordered them to place their hands on a nearby car, and conducted a patdown search. They found no weapons but called in a routine check for outstanding warrants. While the officers waited for the results, another individual walked by and yelled out, "What's up, Ronnie?" Officer Williams observed the defendant acknowledge the greeting with a nod of his head. After the warrant check also proved negative, the officers told the men to turn around. Williams then noticed that the defendant's pants were unbuttoned and his zipper was open. He called defendant's attention to the problem and as the defendant fumbled with his clothing, a plastic bag containing crack cocaine fell from his pants to the ground.
In making a brief investigatory stop on less than probable cause to arrest, the police "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore "articulate something more than an "`inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only "`some minimal level of objective justification....'" Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the "totality of the circumstances whole picture," giving deference to the inferences and deductions of a trained police officer "that might well elude an untrained person." Cortez, 449 U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id.
*1050 The question here is not whether the anonymous tip to officers Williams and Demma alone had sufficient detail and predictive quality to provide probable cause for an arrest, Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), or reasonable suspicion for an investigatory stop, Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), or whether the startled looks of the three men and their attempt to evade the police presence in a high crime area alone gave rise to reasonable suspicion. Whether the police had a "minimal level of objective justification" to detain the defendant turns on the totality of all of the circumstances known to the officers: the informant's tip, which highlighted the black Saints starter jacket worn by the suspected narcotics trafficker; the defendant's presence in an area known to the officers for its narcotics activity and his appearance in a black Saints starter jacket; the startled looks by all three men when they spotted the police; and their attempt to leave the scene as the officers approached. This Court has previously accorded significant weight to evasive conduct in response to police presence in high crime areas, see e.g. State v. Belton, 441 So.2d 1195, 1199 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Wade, 390 So.2d 1309, 1311 (La.1980); State v. Cook, 332 So.2d 760, 763 (La.1976), and we believe that the coalescence of circumstances in this case gave the officers a particularized and objective basis for seizing the three men "to maintain the status quo momentarily while obtaining more information." State v. Fauria, 393 So.2d 688, 690 (La.1981); see also California v. Hodari D., 499 U.S. 621, 623, n. 1, 111 S.Ct. 1547, 1549, n. 1, 113 L.Ed.2d 690 (1991) ("That it would be unreasonable to stop, for brief inquiry, young men who scatter in panic upon the mere sighting of the police is not self-evident and arguably contradicts proverbial commonsense.").
Given the officers' familiarity with the high crime character of the location, the nature of the informant's tip, and the close association of weapons and narcotics trafficking, the police had articulable circumstances which justified a self-protective frisk for weapons accompanying a lawful stop. See United States v. Trullo, 809 F.2d 108, 113-14 (1st Cir.1987) ("`[T]o substantial dealers in narcotics, firearms are as much "tools of the trade" as are most common recognized articles of drug paraphernalia.'") (quoting United States v. Oates, 560 F.2d 45, 62 (2d Cir. 1977)), cert. denied, 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987). The patdown of the defendant did not lead to recovery of the narcotics packet fortuitously revealed when the defendant tried to close his pants, and the time it took the officers to frisk the men and check for outstanding warrants before turning their attention to the defendant's clothing problems clearly did not render the detention unreasonable under circumstances which had further particularized their suspicions when the defendant responded to the calling out of his street name and thereby identified himself as the probable subject of the informant's tip. See United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985) ("In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.").
Accordingly, the decision of the Fourth Circuit is reversed, the defendant's conviction and sentence are reinstated, and this case is remanded to the district court for execution of that sentence.
JOHNSON, J., dissents.
NOTES
[*] Traylor, J., not on panel. See La.S.Ct. Rule IV, Part II, Section 3.