734 So.2d 736 (1999)
STATE of Louisiana
v.
Urban DAPPEMONT.
No. 98-K-0446.
Court of Appeal of Louisiana, Fourth Circuit.
March 17, 1999.
Harry F. Connick, Orleans Parish District Attorney, Randy J. Hoth, Orleans Parish Assistant District Attorney, New Orleans, Counsel for State of Louisiana-Relator.
Dennis K. Dolbear, New Orleans, Counsel for Defendant-Respondent.
Court composed of Chief Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES, Judge STEVEN R. PLOTKIN.
*737 PLOTKIN, Judge.

STATEMENT OF THE CASE
Defendant, Urban Dappemont was charged by bill of information with distribution of marijuana. On January 29, 1998, the trial court granted the defendant's motion to suppress the evidence. The State sought review of that ruling, and on March 25, 1998, we granted the State's writ but denied relief. State v. Dappemont, 98-0446, 734 So.2d 736 (La.App. 4th Cir. 3/17/99). The supreme court remanded to this court for briefing, argument and a full opinion on January 8, 1999, in 98-KK-1118.

FACTS
At the December 22, 1997 hearing on the motion to suppress, the State called Officer Eric Guillard to testify. Officer Guillard testified that on the evening of October 8, 1997, he was working with Officers Gilmore, Fiat, George, Hyde, and Mayfield. They had targeted a particular courtyard in the 3600 block of Hamburg. As they arrived in the area, they observed subjects fleeing the area and alerting other subjects that the police were in the area. As they approached, they observed the defendant. He was walking "off the corner." As he was walking, he placed his hands into his waistband area and looked around in all directions. The police approached him, identified themselves as police officers and ordered him to remove his hands. He removed his hands, at which time Officer Guillard saw a white piece of paper protruding from his zipper area. Officer Guillard conducted a pat-down search. He felt a large bulge where the paper was sticking out. He removed the bulge and found it to be a red, white and blue Popeye's bag. He opened the bag and learned it contained marijuana. The defendant was placed under arrest and it was discovered that he had one hundred and eighty three dollars in his possession. Officer Guillard testified that he had reviewed the Crime Lab Report in connection with the arrest and seizure and learned that the material in the bag tested positive for marijuana.
On cross examination, Officer Guillard was questioned about his report, which allegedly stated he conducted a possible weapons search when he conducted the search of the defendant. When asked if the weapons search was incident to the stop, Officer Guillard stated that when the defendant placed his hand into his front waistband, he did not know if the defendant placed a weapon or bag there. Due to the area's reputation,[1] and for safety reasons, he patted down defendant for safety first. He admitted that when he took the bag out, he realized prior to opening it that it was not a weapon. However, believing it to be some type of contraband, he opened it. He believed it to be contraband because he did not believe that people normally place a Popeye's bag in their waistband area. Officer Guillard testified that the defendant was not fleeing when he saw him; he was walking and looking around to see what was going on. He stopped when the officers identified themselves, but he was constantly looking around and had his hand inside his waistband area. Following the hearing, the trial court gave both sides time to file memoranda. On January 29, 1998, the trial court, citing this court's ruling in State v. Ellington, 96-0766 (La.App. 4th Cir.9/4/96), 680 So.2d 174, granted the motion to suppress. The State seeks a review of that ruling.

DISCUSSION
The State argues that the trial court erred in granting the motion to suppress because the marijuana was lawfully discovered in the course of a patdown frisk for weapons after the police had lawfully detained the defendant. The State argues that the totality of the circumstances justified the initial stop, subsequent search, and eventual seizure of the drugs found on the defendant.

*738 The initial stop:
A temporary stop by a police officer of a person in a public place is authorized by La.C.Cr.P. art. 215.1, which provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Williams, 621 So.2d 199 (La.App. 4th Cir. 1993); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990). As this court noted in State v. Clark, 612 So.2d 232, 233-234 (La.App. 4th Cir.1992), quoting from Johnson:
"Reasonable suspicion" is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Jones, [483 So.2d 1207 (La.App. 4th Cir.1986), writ den. 488 So.2d 197 (1986)]. Mere suspicion of activity is not a sufficient basis for police interference with an individual's freedom. State v. Williams, 421 So.2d 874 (La.1982).
In State v. Ellington, 96-0766 (La.App. 4th Cir.9/4/96), 680 So.2d 174, this court affirmed a judgment granting a motion to suppress in a case similar to the instant case. In that case the police officer testified that he saw the defendant standing in an area known for high drug activity and, upon seeing the marked police car, the defendant put his hands in his pocket as if attempting to conceal something. Thinking that this activity was suspicious and that the defendant was trying to conceal something in his pocket, possibly drugs, the officer stopped the defendant and conducted a patdown search. A folding knife was found in the defendant's right rear pants pocket. The officer then shined a flashlight into the same pocket and found a glass vile containing cocaine residue. This court found that these facts were not sufficient to justify the stop of the defendant. This court noted that the officer did not testify that he saw the defendant engaging in what appeared to be a drug transaction, or that he saw a suspicious object which the defendant attempted to conceal. Further, this court stated that even if the initial stop was justified, the subsequent pat-down frisk of the defendant was not because La.C.Cr.P. art. 215.1 only allowed a frisk of outer clothing for a dangerous weapon. Since the officer did not testify to any particular facts from which he could reasonably infer that the defendant was armed and dangerous, this court held that the patdown frisk was not justified.
In State v. Hill, 97-1012 (La.App. 4th Cir., 9/17/97), 700 So.2d 551, this court denied the state's writ application seeking review of a trial court's judgment granting a motion to suppress. In State v. Hill, officers were on patrol in an area about which they had received a general tip of narcotics activity. The officers had received no descriptions or names of persons involved in the activity. Upon reaching a corner, the officers saw two unknown men either standing or sitting in front of an abandoned building. The men began walking away as the officers approached. The officers stopped the two men and frisked them. Finding nothing, they ran the names of the men through the computer and found that one of them, the defendant, had outstanding arrest warrants. They placed him under arrest and in a search incident to that arrest found a crack pipe containing a trace amount of cocaine. The defendant was charged with simple possession of cocaine and subsequently filed a motion to suppress the evidence. This court found the trial court did not err by granting the motion to suppress since the officers did not have reasonable suspicion to stop the defendant.
*739 Likewise, in State v. Williams, 621 So.2d 199 (La.App. 4th Cir.1993), the defendant was seen standing in a courtyard of a housing project. When he saw the police officers, "he turned immediately and quickly walked away." The officers also saw him "fooling with his belt area." The trial court denied the defendant's motion to suppress the pipe the officers seized after the defendant was stopped and frisked, but this court reversed the trial court's ruling. This court found that these facts did not justify the initial stop of the defendant, and even if the stop was legal, the officers provided no evidence to justify the subsequent pat-down frisk.
However, recently, the Louisiana Supreme court discussed reasonable suspicion in State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988. In that case, the trial court denied the defendant's motion to suppress and he was subsequently convicted of being a convicted felon in possession of a firearm. This court reversed the conviction finding that the police did not have reasonable suspicion to stop the defendant. The supreme court reversed this court and reinstated the conviction and sentence.
In that case, the police were in a marked unit. As they approached the defendant, he clutched his waistband and began to run away from the police. A foot chase ensued, during which defendant discarded a handgun. He was eventually apprehended and arrested. Based on these facts, the supreme court stated:
This Court has previously ruled that flight from police officers, alone, will not provide justification for a stop. State v. Belton, 441 So.2d 1195 (La.1983). This activity, however, is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Belton, 441 So.2d at 1198. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.
Here, Officers Rome and Poulard observed that Defendant, upon seeing the marked police unit, began to run away holding his waistband as if he were supporting a weapon or contraband. These objective facts known to the officers were sufficient to raise a reasonable suspicion that Defendant either was engaging or was about to engage in criminal activity and, thus, justified a stop.
Id. at 989.
Importantly, the facts of the instant case are distinguishable from the facts of Benjamin in that defendant did not flee upon seeing the police. In fact, Officer Guillard specifically testified that:
A: As we arrived in the 3600 block of Hamburg, we observed subjects fleeing the area, alerting other subjects that the police was [sic] in the area. As we continued to approach the area, we observed the subject.
Q: When you say the subject, who are you referring to?
A: The defendant, Urban Dappemont. He was walking off the corner. As he walked off the corner, he placed his hands into his waistband area, looking around in all directions. We continued to proceed towards Mr. Dappemont. We approached him, identified ourselves as police officers and ordered him to remove his hand ...
* * *
A: No. When I saw him he walked down the street. People was [sic] running from in the area. He had his pants
Q: He was not fleeing, correct?
A: He was walking, looking around, looking to see what was going on.
Q: And when he saw you-all he stopped, right?
A: We identified ourselves as police and stopped him and he constantly was looking around ...
*740 Thus, the only bases upon which the officers stopped defendant are that he clutched his waistband and was looking around at what was taking place. The defendant did not flee the scene, in fact he stopped when the police approached him. Moreover, Officer Guillard did not testify that he saw the defendant engaging in what appeared to be drug transactions, or that he saw a suspicious object which the defendant attempted to conceal. There was no testimony on the part of the officer that placing the hands in the waistband was a common practice indicating drug activity; rather, it appears the officer's suspicion was a result of the way the defendant looked. "A hunch or suspicion of illegal activity or transactions is insufficient to establish reasonable grounds to stop a person." Williams, 621 So.2d at 201. Thus, the totality of the circumstances did not justify stopping the defendant; the State did not elicit adequate information from Officer Guillard for a finding of reasonable suspicion sufficient to uphold the detention.

The search and seizure:
Although we hold that the stop was illegal, we will discuss whether the subsequent search and seizure were justified.
La.C.Cr.P. art. 215.1 provides in relevant part as fellows:
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
Pursuant to this section, if an officer stops a person, he may conduct a limited patdown frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. "[W]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a pat-down search "to determine whether the person is in fact carrying a weapon." See, Terry v. Ohio, 392 U.S. at 24, 88 S.Ct. 1868. See also State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990). "The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger." State v. Smith, 94-1502 p. 5 (La.App. 4th Cir.1/19/95), 649 So.2d 1078, 1082; State v. Lightfoot, 580 So.2d 702 (La.App. 4th Cir. 1991).
In State v. Denis, 96-0956 (La.App. 4th Cir. 3/19/97), 691 So.2d 1295, writ denied, 97-1006 (La.6/20/97); 695 So.2d 1352, police officers, on patrol in a high crime area, noticed that the defendant was motioning to passing pedestrians. He appeared to have something clutched in his other hand as he walked with his back to the patrol car. Upon noticing the police, the defendant appeared startled, closed his fist, and placed an object in the back of his waistband. The patrol car pulled to the curb, all three officers exited, and two officers commenced questioning the pedestrians flagged by the defendant. The pedestrians were released after their names were run through the computer and they were briefly questioned. One officer then told the defendant to stop. The defendant complied, and the officer escorted him to the patrol car where he conducted a patdown search. The officer felt a bulge in defendant's lower back where he had appeared to place something earlier. He asked the defendant what it was; the defendant replied "nothing", and then attempted to flee. Following the failed attempt to flee, defendant was placed against the patrol car and frisked. The officer removed the object previously detected in defendant's waistband. The object turned out to be a plastic bag containing twenty-eight rocks of crack cocaine. The defendant was placed under arrest and charged with possession of cocaine. The trial court denied *741 the defendant's motion to suppress the evidence. In reversing the judgment of the trial court, this court found that the officers did not have probable cause to conduct the pat-down search. Since there was no testimony to support a belief that the officers were in danger, this court found the state failed to establish justification for the frisk. Additionally, since the officer who conducted the frisk specifically testified that at no time did he believe the bulge was a weapon, the court also found that the seizure of the bag of cocaine was not warranted.
In State v. Slan, 624 So.2d 451 (La.App. 4th Cir.1993), rev. on other grounds 632 So.2d 749 (La.1994), this court upheld the trial court's suppression of evidence derived from a frisk. The officer in that case testified that he frisked the suspect attempting to find narcotics and there was no evidence to indicate that the frisk was conducted for safety reasons.
However, in State v. Parker, 622 So.2d 791 (La.App. 4th Cir.1993), writ denied, 627 So.2d 660 (La.1993), this court upheld the right of the police officer to frisk a suspect following an investigatory stop. In that case, the defendant was in a high crime area known for drug deals, and the officers had received information that two other individuals in the vicinity were engaged in selling drugs. When the suspects observed the officers drive up, they appeared nervous and many fled. The defendant was standing extremely close to the vehicle from which the drugs were being sold. After the officers found drugs on the other suspects, the defendant attempted to flee, whereupon the officers searched him and found drugs. This court found the officers were justified in conducting a pat down search for weapons.
Likewise, in State v. Lightfoot, 580 So.2d 702 (La.App. 4th Cir.1991), the officers' frisk of a suspect following an investigatory stop was upheld based on the resistance of the subject, the subject's attempt to swallow an object, the dangerous area known to the officers for heavy drug trafficking, the fact that the officers were outnumbered by the suspects, and the fact that the officers were aware that drugs were involved.
In State v. Bridges, 610 So.2d 827 (La. App. 4th Cir.1992), officers stopped and frisked a suspect who matched a description of "a suspicious person possibly selling narcotics". The officers decided to frisk the suspect "because the area was known for a high amount of sales and use of narcotics and drug dealers were known to carry weapons." When the suspect refused to unclench his hand, the officers forced it open and found contraband. This court found that the officers' frisk and retrieval of the contraband was proper because one officer testified that he believed that the suspect "could have had a weapon, such as a pocketknife, in his hand."
In State v. Wartberg, 586 So.2d 627 (La. App. 4th Cir.1991), this court found that the officer's observation of a drug transaction would lead to a reasonable police officer to believe that the subjects would be armed and dangerous. "Consequently, [the police officer], as a reasonably cautious policeman, was entitled to fear that the defendant might have a weapon and was justified in searching him". Id., at 629.
In the instant case, Officer Guillard testified that when the defendant removed his hand from his waistband he saw a white piece of paper protruding from his zipper area. There is no testimony in the case concerning Officer Guillard's experience. Nor is there any testimony concerning the reasons for targeting that area for patrolling. Given the numerous cases of drug activity in the various projects, this Court could assume that drug trafficking was one of the reasons. However, there is no testimony of any recent complaints of drug activity. There is no evidence this particular defendant was known to the officers, or that they had any information to indicate he was involved in drug trafficking. However, on cross-examination, Officer Guillard *742 did testify that he did not know whether the defendant had a weapon or not, but considering the reputation of the area where he was stopped, he conducted a pat-down search for safety reasons. Thus, had the defendant been lawfully stopped pursuant to reasonable suspicion, the frisk for a possible weapon may have been legal.
However, Officer Guillard further testified that when he patted down defendant, he immediately realized that the Popeye's bag did not contain a weapon. He stated he knew there was no weapon, but assumed the bag contained contraband.
A: ... I didn't know if he placed a weapon there, or placed a bag there. I didn't know at the time. For my safety, I pat down for safety first.
Q: And when you took the bag out, you must have realized at that point without opening it that it was not a weapon, correct?
A: Yes, it wasn't a weapon.
Q: It was or was not a weapon? A: It was not a weapon.
Finally, even if the evidence presented justified the frisk, the trial court did not err when it granted the motion to suppress because the seizure of the marijuana was not justified under the "plain feel" exception to the warrant requirement.
The seizure of the red, white, and blue Popeye's bag exceeded the scope of a frisk for weapons. In State v. Johnson, 94-1170 (La.App. 4th Cir.8/23/95), 660 So.2d 942, writ denied, State v. Johnson, 95-2331 (La.2/2/96), 666 So.2d 1092, and State v. Dibartolo, 95-3044 (La.2/2/96), 666 So.2d 1105, this court discussed the "plain feel" doctrine as set forth in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993):
In Dickerson, the Court ruled that officers may seize contraband detected by touch during a pat-down search if the search remains within the bounds of a Terry pat-down search. The Court stated:
* * *
... The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendmentor at least no search independent of the initial intrusion that gave the officers their vantage point.... The same can be said of tactile discoveries of contraband. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

Minnesota v. Dickerson, 508 U.S. at 375-376, 113 S.Ct. at 2136-2137.
Only a few Louisiana cases have considered Dickerson. In State v. Parker, 622 So.2d 791 (La.App. 4th Cir.1993), writ denied 627 So.2d 660 (1993), the officer, while conducting a pat-down search, seized a matchbox containing crack cocaine. Because the officer could not tell that the matchbox contained contraband just by feeling it, this court found that its seizure was not justified by Dickerson ... In State v. Short, 605 So.2d 1102 (La.1992), decided before Dickerson, the officer seized crack cocaine from the defendant's watch pocket discovered during a pat-down search. Although this court upheld the seizure, the Supreme Court reversed, merely stating: "The search went beyond a frisk for weapons." It is unclear, however, if this ruling would be affected by the subsequent ruling in Dickerson.

*743 State v. Johnson, 94-1170 at pp. 6-7, 660 So.2d at 947-948.
In the instant case, Officer Guillard admitted that he did not believe the bag contained a weapon, rather he believed it contained contraband. However, aside from the fact that a waistband is not a normal place to find a Popeye's bag, Officer Guillard articulated no facts to substantiate his belief that the bag contained contraband. He did not state the he was familiar with the "feel"of concealed marijuana, nor did he state that he had any experience with identifying marijuana through "feel." Because Officer Guillard could not possibly have known the bag contained contraband, the bag could not be seized under the "plain feel" exception.
The burdens of proof in a motion to suppress evidence are set forth in La. C.Cr.P. art. 703(D) which provides:
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
Since the search and seizure was warrantless, the burden of proof was on the State to prove the evidence was admissible. The trial court found that the State did not meet this burden. The trial court is vested with great discretion when ruling on motion to suppress. State v. Williams, 95-1971 (La.App. 4 Cir. 11/16/95); 665 So.2d 112, 116 and State v. Scull, 93-2360, p. 9 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239, 1245. The detention and search of defendant was not authorized as an extended pat down search pursuant to reasonable suspicion of criminal activity on defendant's part.
Accordingly, the trial court did not err in granting the motion to suppress in this case.
WRIT GRANTED; AFFIRMED.
BYRNES, J., dissents with reasons.
BYRNES, J., DISSENTING WITH REASONS:
I respectfully dissent based on my conclusion that the evidence was properly seized.
Based on the totality of circumstances, I conclude that the officers had reasonable suspicion to make an investigatory stop. "Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, 94-2112 (La. App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819.
In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy that the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir.1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir.1993), writ denied, 626 So.2d 1177 (La.1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination *744 of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir. 1991), writ denied, 578 So.2d 131 (La. 1991). Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983), certiorari denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992); State v. Preston, 569 So.2d 50 (La.App. 4 Cir.1990).
In State v. Huntley, 97-0965, p. 3 (La.3/13/98); 708 So.2d 1048, 1049, the Louisiana Supreme Court stated:
In making a brief investigatory stop on less than probable cause to arrest, the police "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore `articulate' something more than an "`inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only "`some minimal level of objective justification....'" Sokolow, 490 U.S. 1, 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the "totality of the circumstancesthe whole picture," giving deference to the inferences and deductions of a trained officer that might well elude an untrained person. Cortez, 449 U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police `not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' Id." [Emphasis added.]
The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but, rather whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. McKinney, 93-1425 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120, writ denied 97-1339 (La.12/19/97), 706 So.2d 444; State v. Lambright, 525 So.2d 84 (La.App. 3 Cir. 1988), writ denied 530 So.2d 83 (La.1988). Deference should be given to the experience of the policemen who were present at the time of the incident. State v. Short, supra. A certain look or gesture may not mean anything to the ordinary person; however, a policeman has sound judgment based on long experience to interpret these acts. An officer should react for his safety under the conditions and events as they occur.
In Huntley, supra, the officers had received an anonymous tip that a black male by the name of "Ronnie" was selling crack cocaine on that day in the project. The woman tipster offered no details as to the transactions within the project but said that Ronnie wore a black New Orleans Saints jacket. The officers conducted a routine patrol in the St. Bernard Housing Project. They saw three men standing together in the area, and one had on a New Orleans Saints jacket. The Supreme Court stated:
... When the men noticed the officers in their marked patrol unit, they "appeared startled and they attempted to dis[perse]." The officers stopped the men, ordered them to place their hands on a nearby car, and conducted a pat-down search. They found no weapons but called in a routine check for outstanding warrants. While the officers waited for the results, another individual walked by and yelled out, "What's up, Ronnie?" Officer Williams observed the *745 defendant acknowledge the greeting with a nod of his head. After the warrant check also proved negative, the officers told the men to turn around. Williams then noticed that the defendant's pants were unbuttoned and his zipper was open. He called defendant's attention to the problem and as the defendant fumbled with his clothing, a plastic bag containing crack cocaine fell from his pants to the ground.

Id., 708 So.2d at 1049.
The Louisiana Supreme Court referred to California v. Hodari D., 499 U.S. 621, 623, n. 1, 111 S.Ct. 1547, 1549, n. 1, 113 L.Ed.2d 690 (1991), and stated: ("That it would be unreasonable to stop, for brief inquiry, young men who scatter in panic upon the mere sighting of the police is not self-evident and arguably contradicts proverbial commonsense.") Huntley, supra, 708 So.2d at 1050.
In State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989, while the police were on patrol, they came alongside Benjamin in a patrol car, and he "began to run away holding his waistband as if he were supporting a weapon or contraband." The Supreme Court did not mention whether the police articulated that they were in a high crime area. The majority in the present case distinguishes this case from Benjamin, because Benjamin fled whereas Dappemont did not run; however, others did, and the officers also observed Dappemont's actions of looking around in all directions and placing his hands into his waistband area, which appeared to be suspicious. It is not unreasonable and it was commonsense to stop Dappemont who made suspicious movements upon the sighting of the police.
In the present case the arresting officer articulated reasons why he had reasonable suspicion of criminal activity so as to justify the investigatory stop of the defendant. Officer Guillard testified that the police officers "observed subjects fleeing the area, alerting other subjects that the police was in the area." The officer noted the reputation of the St. Bernard Project, and stated that as Dappemont walked off the corner, "he placed his hands into his waistband area, looking around in all directions." The officers ordered the defendant to remove his hand. The officer further stated that when he saw a white piece of paper sticking from the defendant's zipper area, the officer thought it could possibly be contraband. He did a pat down search and felt a large bulge from where the paper was sticking. When the officer saw that it was a Popeye's bag, he opened it up and it contained marijuana.
In State v. Ganier, 591 So.2d 1328 (La. App. 4 Cir.1991), in which the police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The juvenile saw the officers, turned "suspiciously", began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended. This court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
... Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there.

State v. Ganier, 591 So.2d at 1330. [Emphasis added.]
In the present case the officer stated three factors which were sufficient to justify a stop of Dappemont: "the area's reputation in the St. Bernard Project"; the fact that the police "observed subjects fleeing the area, alerting other subjects that the police was in the area"; and the reactions *746 of Dappemont as "he walked off the corner, he placed his hands into his waistband area, looking around in all directions." Although the actions of the defendant may have been innocent if considered individually, under the totality of the circumstancesthe whole picture, giving deference to the inferences and deductions of a trained officer that might well elude an untrained person, the officer enunciated reasons to justify the investigatory stop.
The officer's pat down of the defendant for weapons was justified. The officer testified that: "Well, when we saw him place his hand into his front waistband, due to the area's reputation in the St. Bernard Project, I just saw him place his hand there. I didn't know if he placed a weapon there or placed a bag there. I didn't know at the time. For my safety, I pat down for safety first." Based on the area's reputation in the St. Bernard Project, and the suspicous actions displayed by Dappemont, a subsequent safety pat-down was proper. The officer also stated that he: "didn't know if he [the defendant] placed a weapon there."
In Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), when a police officer lawfully pats down a suspect's clothing for weapons and feels an object whose contour or mass makes its identity immediately apparent to be contraband, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons.
In State v. Parker, 94-0624, p. 2 (La. App. 4 Cir. 11/18/94), 645 So.2d 1309, 1310, writ denied 94-3042 (La.9/15/95), 660 So.2d 446, this court noted:
Having legitimately stopped the defendant whom they were just told moments before was selling drugs, they saw that his fist was clenched. Common sense dictated that he was holding the merchandise he was selling in the clenched fist. Defendant had no expectation of privacy in his clenched fist under these circumstances. In addition, since the clenched fist in all probability held drugs the situation was analogous to the drugs being in the plain view of the officers. [Emphasis added.]
In the present case, it is clearly apparent that the defendant was trying to conceal something illegal by placement of what was found to be a Popeye's bag in the front of his pants, as indicated by the piece of white paper caught in his zipper. It was reasonable for the officer to believe that the bag did not contain food but contained contraband because of the peculiar place that it was located in the defendant's pants where the pants zipped. The officer articulated his reason to believe that the bag contained contraband: "I believed it to be some type of contraband. People just don't put a big Popeye's bag into their you know, it's just not normal to put a Popeye's bag in your waistband area." It would be immediately apparent for the officer to conclude that it would be highly unlikely for someone to place a bag in the location of where one's pants are zipped unless one was concealing an illegal substance. In Parker, id., "since the clenched fist in all probability held drugs, the situation was analogous to the drugs being in the plain view of the officers." In the present case, since the paper bag being in the defendant's zippered pants in all probability held drugs, the situation was analogous to being in the plain view of the officers.
Under the totality of circumstances, giving deference to the police officer's training, it would be highly suspicious, and the officer could reasonably determine that the bag contained contraband. The contraband would be properly seized based on the officer's immediate and reasonable belief that it was contraband.
In the present case the investigatory stop was proper, and the seizure was justified because when the officer was conducting a proper pat down search for weapons, he found what he immediately believed to be contraband in a Popeye's bag placed in *747 the peculiar and highly suspicious location in the defendant's pants where the pants zipped. There was no invasion of the defendant's privacy beyond that already authorized by the officer's search for weapons.
Accordingly, I would affirm the ruling of the trial court, and deny the defendant's motion to suppress.
NOTES
[1] The arrest took place in the St. Bernard Project.