hLANDRIEU, Judge.
The State of Louisiana filed a bill of information charging the defendant, Laron Williams, with one count of possession of cocaine. In this writ application, the defendant seeks review of the trial court’s judgment denying his motion to suppress the evideiice against him.
According to Officer Brian Danigole, the sole witness at the motion, to suppress hearing, he, his partner, Officer Dan Chau-vin, and Sergeant Stephen Gaudet were on proactive patrol in the St. Thomas Housing Development on May 1, 1999 at approximately 10:30 p.m. Officer Chauvin left the police vehicle in the 700 block of Felicity Street, then walked to St. Thomas while the other officers proceeded by car in a different direction. As Officer Danigole and Sergeant Gaudet turned west, they heard screams that the police were in the area and “heads up.” At that time, Officer Chauvin saw the defendant walk out of a driveway, look around, see the marked police cars, walk back into the driveway, take something from his right pocket, and throw the object in front of an abandoned apartment. Officer Danigole was informed of the defendant’s actions and proceeded to detain him on the back of the police car while Sergeant Gaudet and Officer Chau-vin looked for the object that the defendant had discarded. Officer Danigole attempted to frisk the defendant, but he was belligerent and attempted to protect his 1 fright side, causing Officer Danigole to handcuff the defendant. As he did so, the defendant reached into his right front pocket and discarded a plastic object, which was retrieved and found to contain crack cocaine. The defendant was formally arrested. A continued search for the object originally discarded by the defendant was unsuccessful. The defendant was then transported to the police station. When he was removed from the police car, the officers looked behind the seat and found powdered cocaine.
On cross-examination, Officer Danigole testified that had no knowledge of the defendant nor did the officers receive a tip regarding him. He further testified that there were no other people in the close vicinity of the defendant. The officer initially asked the defendant to walk to the rear of the police vehicle, which he did.
After Officer Danigole testified, the trial court found probable cause and denied the motion to suppress evidence but gave no reasons.
In his writ application, the defendant argues that the police lacked reasonable suspicion to stop and detain Mm because the only articulated suspicious behavior by the defendant was his looking around and making a throwing motion. The defendant claims that it was too dark to see what if anything he discarded, that he did not flee when he saw the police, that no illegal activity was seen, and that no contraband was found.
In State v. Sneed, 95-2326, p. 3 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, 1238, writ denied 96-2450 (La.3/7/97), 689 So.2d 1371, we set forth the standard to support an investigatory stop:
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person “is committing, has committed, or is about to commit an offense.” La.Code Crim. Proc. Ann. art. 215.1. While “reasonable suspicion” is something less than the probable cause needed for an arrest, it must be based upon particular articu-lable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. The officer’s past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138 (La.App.2 Cir. 8/17/94), 641 So.2d 1081, 1084.
In State v. Huntley, 97-0965, p. 3 (La.3/13/98); 708 So.2d 1048, 1049, the Louisiana Supreme Court stated:
*51 In making a brief investigatory stop on less than probable cause to arrest, the police “ ‘must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.’ ” State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore “articulate something more than an “ ‘inchoate and unparticularized suspicion or “hunch.” ’ ” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only “ ‘some minimal level of objective justification....’ ” Sokolow, 490 U.S. 1, 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the “totality of the circumstances — the whole picture,” giving deference to the inferences and deductions of a trained officer that might well elude an untrained person. Cortez, 499 U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police ‘not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.’ Id.”
In State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, the Supreme Court under slightly different facts found that, under the totality of the circumstances, there was not a sufficient basis for a stop of the defendant. In Robertson, the police received an anonymous tip from a concerned citizen via the “ATF” Hotline. The citizen described an individual known as “Will,” who drove a dark green Pontiac. The citizen stated that Will, who was described in detail, was involved in narcotics sales in the Magnolia Housing Development. The citizen informed the police where Will’s car could be found when he was not using it' to Rdeliver narcotics. Based on this tip, police; officers drove to the location where the citizen indicated Will’s car would be routinely parked. A vehicle matching the description was there. While the officers watched, the vehicle was driven away. The officers followed, without interfering, until the vehicle was parked and the driver exited. At that point, the police approached and asked the driver his name. He identified himself as William Robertson. The officers observed that the defendant matched the description given in the tip. They then detained the defendant and his vehicle while a canine detection unit responded. After the dog alerted on the vehicle, it was searched and narcotics seized. In reversing the trial and appellate courts’ denials of the motion to suppress, the Louisiana Supreme Court applied the totality of the circumstances test set forth in Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), focusing on the lack of predictive information from the anonymous informant and the fact that the defendant at no time ~ exhibited any suspicious behavior.
Recently, under facts very similar to the instant case, in State v. Dappemont, 98-0446 (La. App. 4 Cir. 3/17/99), 734 So.2d 736, we found there was no reasonable suspicion to justify an investigatory stop. The police officers in Dappemont had testified that they were targeting a particular block in a housing project. When they arrived in the area, they saw several people “fleeing and alerting other subjects that the police were in the area.” Dappemont, p. 1, 734 So.2d at 737. The officers also saw the defendant who was walking “off the corner” while also placing his hands into his waistband and looking around in all directions. Id., p. 2, 734 So.2d at 737. The officers approached the defendant and ordered him to remove his hands from his waistband; a white piece of paper could be seen protruding from the defendant’s zipper area. When the defendant was frisked, the officer could feel a large bulge where the paper was; the *52 bulge was removed and found to be a Popeye’s bag. The officer found marijuana inside the bag. The officer further | ¡jtestified that initially he frisked the defendant for weapons because of the area’s reputation; he seized and opened the bag because he believed it contained contraband, not because he thought it contained a weapon. The officer also testified that the defendant did not flee when he saw the police, but was “constantly looking round and had his hand inside his waistband area.” Id., at p. 3, 734 So.2d 737. The trial court granted the motion to suppress the evidence, and we affirmed, noting that the defendant did not flee the scene, but in fact complied with the police officer’s demand that he approach, that the defendant was never observed in any apparent drug transactions, that there had been no tip or information regarding the defendant, who also was not known to the police, and that there was no testimony to indicate that placing one’s hands in a waistband was a common practice associated with narcotics activity. In addition to finding that the stop was illegal, we also found that the officer exceeded the scope of a weapons frisk.
In this case, the police officers did not recognize the defendant nor did the police previously receive any information regarding him. The defendant did not flee from the police; instead, when people yelled that the police were in the area, the defendant walked out of a driveway and looked around, saw the marked police cars, then walked back into the driveway. As in Dappemont, the defendant at that point had done nothing more than evidence curiosity. He did not run or flee upon hearing that the police were in the area. Although Officer Danigole testified that he saw the defendant take something from his right pocket and throw it in front of an abandoned apartment, there was no testimony that such an action was consistent with narcotics activity.
Notably, Officer Chauvin was the officer who actually saw what the defendant did and how he looked, but he did not testify at the motion to suppress hearing. The burdens of proof in a motion to suppress evidence are set forth in La.C.Cr.P. art. 703(D) which provides:
|fiD. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
Because the search and seizure in this case was warrantless, the burden of proof was on the State to prove the evidence was admissible. After reviewing the transcript from the motion to suppress hearing, we do not find that the State satisfied its burden. Accordingly, the judgment of the trial court is reversed and defendant’s motion to suppress the evidence is granted.
WRIT APPLICATION GRANTED; JUDGMENT REVERSED.