804 So.2d 863 (2001)
STATE of Louisiana
v.
Carl E. BROWN.
No. 2000-KA-2120.
Court of Appeal of Louisiana, Fourth Circuit.
December 19, 2001.
Harry F. Connick, District Attorney, Leslie P. Tullier, Assistant District Attorney, *864 New Orleans, LA, Counsel for Plaintiff/Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge JOAN BERNARD ARMSTRONG and Judge TERRI F. LOVE.
Judge JOAN BERNARD ARMSTRONG.

STATEMENT OF THE CASE:
The defendant, Carl E. Brown, was charged May 15, 1995, with possession of cocaine in an amount more than twenty-eight grams, but less than two hundred grams. La. R.S. 40:967. He was arraigned May 23, 1995, and pled not guilty. He filed a motion to suppress which was denied September 22, 1995. A twelve member jury found him guilty of attempted possession of more than twenty-eight grams, but less than two hundred grams on September 5, 1996. He was sentenced October 4, 1996, to ten years at hard labor. The State filed a multiple bill accusing him of being a third offender. The trial court found him guilty. His original sentence was vacated, and he was re-sentenced to thirty years at hard labor without benefit of parole, probation, or suspension of sentence, and fined $50,000. He was granted an out-of-time appeal.

ERRORS PATENT/ASSIGNMENT OF ERROR THREE:
A review of the record reveals one error patent. The trial court sentenced defendant to imprisonment without benefit of parole, probation or suspension of sentence. La. R.S. 40:967(F)(1)(a) provides that a person convicted of possessing cocaine in the amount of twenty-eight grams or more, but less than two hundred grams, shall be sentenced to imprisonment at hard labor for not less than ten years, nor more than sixty years. La. R.S. 40:967(G) provides that the sentence of a person sentenced under Subsection F shall not be suspended. The provision bars a defendant's eligibility for probation or parole only prior to his serving the minimum sentence. Defendant was convicted of an attempt. La. R.S. 14:27 provides that a person convicted of an attempt of the variety in the instant case shall be imprisoned in the same manner as for the offense attempted, with such imprisonment not exceeding one-half of the longest term of imprisonment prescribed for the offense so attempted. Thus, there effectively is no minimum sentence for a person convicted of attempted possession of cocaine in an amount more than twenty-eight grams but less than two hundred grams. Therefore, defendant's sentence must be amended to delete the provision denying him the benefits of probation and parole. State v. Rodriguez, XXXX-XXXX (La.App. 4 Cir. 2/14/01), 781 So.2d 640.

FACTS:
Officer Reginald Jacques testified that he received citizen complaints about crack dealing in the 1700 block of Lopez Street. The information was that there were numerous people going in and out of 1700 and 1702 Lopez Street. He and other officers began a surveillance on April 4, 1995, around 8:00 p.m. Jacques saw numerous people going in and out of the back door, which was a converted garage. Some people would knock and be met at the gate where they would turn over currency for a small object. The officers recognized this activity as narcotics transactions. Sometime after 10:00 p.m., a maroon Buick Regal pulled up and blew the horn. A black woman wearing a night gown came out of the house and talked through the passenger window of the car *865 to the one person in the car. Jacques recorded the license plate. The woman received a small object from the driver. Officer Jacques determined that the woman was receiving a delivery, rather than making a sale. He called for the car to be stopped.
On cross-examination, Officer Jacques, said that none of the people who went to the house was stopped after making the apparent purchases, that he could not see the package the woman took into the house, and that a search warrant was obtained for the house and no drugs were found.
Officer Charles Schlosser said the license plate was registered to the defendant.
Sergeant Kenneth McCaffery said he and Detective John Fitzpatrick were the take down team. He saw the car within seconds of getting the order to stop it. The officers followed the car in an unmarked car for some distance away from the house so as not to compromise other investigations. They stopped the car at Carrollton Avenue and Palmetto Street. They shone a flashlight into the car and immediately saw three bags of cocaine in a coin tray and cup holder between the front seats. Two of the bags were large; one was small. The defendant was arrested. A K-9 unit was called. A subsequent search of the car revealed an additional fifty-four grams of cocaine.
Detective Fitzpatrick said the three bags of cocaine in the coin tray were the first things he saw when he approached the car. He said the dog found the largest amount of cocaine in the car contained in the cup holder under some trash. The dog also found cocaine in a gym bag. A scale was in the bag. The officers also recovered $190.00 in small bills from the defendant's person.
A criminalist testified the total weight of the cocaine was forty-eight grams.

ASSIGNMENT OF ERROR ONE:
In his first assignment of error, the defendant claims that his conviction and sentence should be vacated because the record is missing a transcript from the motion to suppress hearing.
La. Const. Art. I, § 19 provides that "[n]o person shall be subjected to imprisonment ... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based." La.C.Cr.P. art. 843 requires, in all felony cases, the recording of "all the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements and arguments of counsel." As a corollary, La. R.S. 13:961(C) provides that, in criminal cases tried in the district courts, the court reporter shall record all portions of the proceedings required by law and shall transcribe those portions of the proceedings required. A criminal defendant has a right to a complete transcript of his trial proceedings, particularly where appellate counsel on appeal was not also trial counsel. State v. Landry, 97-0499, p. 3 (La.6/29/99), 751 So.2d 214, 215. However, this Court has held that under some circumstances a complete appellate review of a conviction and sentence can be accomplished, even when there are missing portions of the trial record. See, e.g., State v. Cooley, 98-0576, p. 9 (La.App. 4 Cir. 11/17/99), 747 So.2d 1182, 1187. An incomplete record may be adequate for appellate review. State v. Hawkins, 96-0766, p. 8 (La.1/14/97), 688 So.2d 473, 480. Finally, a defendant is not entitled to relief absent a showing of prejudice based on the missing portions of the transcripts. State v. Castleberry, 98-1388, p. 29 (La.4/13/99), 758 So.2d 749, 773.
*866 Here, the defendant makes no showing of prejudice. The minute entry of the motion to suppress hearing establishes that the only person who testified was Detective Fitzpatrick. The defendant does not argue that there was an inconsistency between Detective Fitzpatrick's testimony at the hearing and at trial.
This assignment is without merit.

ASSIGNMENT OF ERROR TWO:
In his second assignment of error, the defendant argues the trial court erred in denying his motion to suppress.
In State v. Sneed, 95-2326, p. 3 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, 1238, this Court described the standard to support an investigatory stop:
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person "is committing, has committed, or is about to commit an offense." La.Code Crim. Proc. Ann. art. 215.1. While "reasonable suspicion" is something less than the probable cause needed for an arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4th Cir.1/19/95), 649 So.2d 1078, 1082. The officer's past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138 (La.App.2nd Cir. 8/17/94), 641 So.2d 1081, 1084.
See also State v. Smiley, 99-0065 (La.App. 4 Cir. 3/3/99), 729 So.2d 743; State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713.
In State v. Huntley, 97-0965, p. 3 (La.3/13/98); 708 So.2d 1048, 1049, the Louisiana Supreme Court stated:
In making a brief investigatory stop on less than probable cause to arrest, the police "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore "articulate something more than an `"inchoate and unparticularized suspicion or `hunch.'"'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only "`some minimal level of objective justification....'" Sokolow, 490 U.S. 1, 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the "totality of the circumstancesthe whole picture," giving deference to the inferences and deductions of a trained officer that might well elude an untrained person. Cortez, 449 U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id.

In Huntley, the police received information from an unidentified woman that a man named "Ronnie" was selling crack cocaine that day in the housing development. She also stated that "Ronnie" normally wore a black New Orleans Saints starter jacket. Later that day, officers on patrol entered a driveway in the project, known to them to be an area with a great deal of narcotics activity, and saw three men standing together. One of the men was wearing a jacket which matched the *867 description given by the anonymous informant. As the three men saw the marked police car, they appeared startled and attempted to disperse. The officers stopped all three suspects, placed them on the car, conducted a patdown, which was negative, and a warrant check. While the warrant check was occurring, another person walked by and yelled, "What's up, Ronnie?" The defendant acknowledged the greeting. When the warrant check results were received and proved to be negative, the officers told the men to turn around. At that point, one of the officers noticed that the defendant's zipper was open and his pants unbuttoned and informed the defendant. As the defendant attempted to close his zipper, a plastic bag containing crack cocaine fell out. On review of this Court's decision granting the motion to suppress the evidence, the Supreme Court found that, "[g]iven the officers' familiarity with the high crime character of the location, the nature of the informant's tip, and the close association of weapons and narcotics trafficking, the police had articulable circumstances which justified a self-protective frisk for weapons accompanying a lawful stop." Huntley, 708 So.2d at 1050.
In contrast to Huntley, in State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, the Supreme Court under slightly different facts found, under the totality of the circumstances, that there was not a sufficient basis for a stop of the defendant. In Robertson, the police received an anonymous tip from a concerned citizen via the "ATF" Hotline. The citizen described an individual known as "Will," who drove a dark green Pontiac. The citizen stated that Will, who was described in detail, was involved in narcotics sales in the Magnolia Housing Development. The citizen informed the police where Will's car could be found when he was not using it to deliver narcotics. Based on this tip, police officers drove to the location where the citizen indicated Will's car would be routinely parked. A vehicle matching the description was there. While the officers watched, the vehicle was driven away. The officers followed, without interfering, until the vehicle was parked and the driver exited. At that point, the police approached and asked the driver his name. He identified himself as William Robertson. The officers observed that the defendant matched the description given in the tip. They then detained the defendant and his vehicle while a canine detection unit responded. After the dog alerted on the vehicle, it was searched and narcotics seized. The trial court subsequently denied the motion to suppress; this Court affirmed in an unpublished opinion (Judge Murray dissenting). State v. Robertson, unpub., 97-1950 (La.App. 4 Cir.11/5/97, 701 So.2d 272). The Louisiana Supreme Court reversed. The court applied the totality of the circumstances test set forth in Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), focusing on the lack of predictive information from the anonymous informant and the fact that the defendant at no time exhibited any suspicious behavior.
In State v. Dappemont, 98-0446 (La. 4 Cir. 3/17/99), 734 So.2d 736, this Court found that there was not reasonable suspicion to justify an investigatory stop. The police officers in Dappemont had testified that they were targeting a particular block in a housing project. When they arrived in the area, they saw several people "fleeing and alerting other subjects that the police were in the area." Dappemont, p. 1, 734 So.2d at 737. The officers also saw the defendant who was walking "off the corner" while also placing his hands into his waistband and looking around in all directions. Id., p. 2. The officers approached the defendant and ordered him to remove his hands from his waistband; a *868 white piece of paper could be seen protruding from the defendant's zipper area. When the defendant was frisked, the officer could feel a large bulge where the paper was; the bulge was removed and found to be a Popeye's bag. The officer found marijuana inside the bag. The officer further testified that initially he frisked the defendant for weapons because of the area's reputation; he seized and opened the bag because he believed it contained contraband, not because he thought it contained a weapon. The officer also testified that the defendant did not flee when he saw the police, but was "constantly looking round and had his hand inside his waistband area." Id., at p. 3. The trial court granted the motion to suppress the evidence, and this Court affirmed, noting that the defendant did not flee the scene, but in fact complied with the police officer's demand that he approach, that the defendant was never observed in any apparent drug transactions, that there had been no tip or information regarding the defendant, who also was not known to the police, and that there was no testimony to indicate that placing one's hands in a waistband was a common practice associated with narcotics activity. In addition to finding that the stop was illegal, the Court also found that the officer exceeded the scope of a weapons frisk.
In the instant case, the officers received citizen complaints that drugs were being sold from the house. The officers conducted a surveillance during which they observed several narcotics transactions: currency exchanged for small objects. At that point, the officers had knowledge of citizen complaints of crack sales with strong corroboration: they witnessed the exact type of suspicious behavior that routinely surrounds narcotics trafficking. There is no question that the officers would have had reasonable suspicion to stop someone leaving the house after they had completed a narcotics transaction. If one of the buyers had been stopped and been in possession of crack, the officers surely would have had probable cause to obtain a warrant for the house.
The case does present a strange twist in that no one leaving the house after visiting the garage was stopped, nor did the officers attempt to obtain a warrant for the house. The car was stopped instead, and Officer Jacques testified that he assumed the driver was making a delivery rather than a purchase when the woman came out of the house and received a small object. The question then becomes whether the officers had reasonable suspicion to believe that there were still drugs in the car after the delivery was made. In State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879 at 880, the Louisiana Supreme Court stated that "the determination of reasonable grounds for an investigatory stop, or probable cause for an arrest, does not rest on the officer's subjective beliefs or attitudes but turns on a completely objective evaluation of all of [the] circumstances known to the officer at the time of his challenged action." Therefore, we find it irrelevant that Officer Jacques thought the defendant had made a delivery rather than a purchase. He and his fellow officers were in possession of knowledge that the defendant had just engaged in an apparent narcotics transaction, and thus there was reasonable suspicion to stop the car.
The officers stopped the car some distance away from the house so as not to compromise the investigation of the house. The officers approached the car and immediately saw the bags of cocaine, giving them probable cause to arrest.
This assignment is without merit.

*869 SUPPLEMENTAL ASSIGNMENT OF ERROR:
The defendant argues the trial court erred in finding him to be a third offender.
The defendant argues that his attorney pled guilty for him, rather than his pleading guilty himself. The defendant did not plead guilty. He admitted identity, the trial court fully examined the supporting documents in open court, and the court found the defendant guilty after it found the crimes linked up.
The defendant complains that the court failed to inform him of the allegations in the bill. A reading of the transcript reveals that the trial court fully examined the documents and discussed the crimes in front of the defendant in open court.
The defendant argues the trial court did not advise him that he was entitled to a hearing. The defendant in fact received a hearing.
This assignment is without merit.
For the foregoing reasons, we affirm the conviction of the defendant. We amend his sentence to delete that portion which denies the benefits of probation and parole. In all other respects we affirm the sentence imposed on the defendant.
CONVICTION AFFIRMED; SENTENCE AMENDED, AND AFFIRMED AS AMENDED.