576 So.2d 1200 (1991)
STATE of Louisiana
v.
Daryl VINET.
No. 90-KA-724.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 1991.
John M. Mamoulides, Dist. Atty., Terry M. Boudreaux, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, for plaintiff/appellee.
Bruce G. Whittaker, Indigent Defender Bd., Gretna, for defendant/appellant.
Before BOWES, DUFRESNE and WICKER, JJ.
WICKER, Judge.
Defendant, Daryl Vinet, entered a plea to La.R.S. 40:967 C, possession of cocaine, pursuant to North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) and State v. Crosby, 338 So.2d 584 (La. 1976). He received a sentence of three years with credit for time served. Vinet now appeals the trial court's denial of his motion to suppress the evidence. We affirm the conviction and sentence.
The testimony at the suppression hearing set out the following. In the early morning hours of October 12, 1989, Sergeant John Nelson and Officer Louis Licciardi were on routine patrol in the northern part of the Shrewsbury subdivision, in an area known as "Coke Alley", a high drug area. Between 3:25 and 3:30 a.m., they were driving down South Arnoult and observed three males, one of whom was straddling a bicycle. When the subjects observed the partially marked police car, the one on the bicycle rapidly pedalled away and the two others moved toward an adjacent parking area. The police car had decals on the side but no lights on the top. One of the subjects, later identified as Vinet, threw a small white object into the air as he walked. While Officer Licciardi detained the two subjects, Sergeant Nelson retrieved the object which had been thrown away. A small bag of white powder was located. A field test revealed the presence of cocaine.
Vinet, one of the pedestrians observed by the officer, testified at the suppression hearing and stated that he had never seen the package of cocaine prior to the time it was shown to him by the officers. He claimed that he was on his way to work at the time of the incident and that he only moved out of the street to avoid the speeding police unit.
Officer Licciardi testified he had made several arrests in this drug area over a one and one-half year period. The three people were in the middle of the road. He did not see anything exchanged among them. He saw no criminal activity being conducted by the three people. The patrol car was traveling approximately 20 miles per hour. It was the officers' intention to stop the three people after they were seen by them in the middle of the street because of the problems in that neighborhood. Officer Licciardi *1201 was approximately 15 to 20 feet away from Vinet when he saw Vinet flip the white object into the air. He suspected it contained drugs based on his experience. The officer did not did not know it was in fact drugs until it had been tested. The bag was "less than the size of a finger" and "about the size of the tip of the finger." He stated he and Officer Nelson "were getting out of the car" when they called Vinet and the second pedestrian over.
Officer Licciardi testified when the three people saw the car was a police unit they took off. The one on the bicycle sped away and the two pedestrians "immediately went into the parking lot." At that point the officers "increased [their] speed a little bit" to stop them. Both subjects were called over to the police car. Officer Nelson retrieved the white packet.
Officer Nelson testified he saw Vinet flip the white object. He was driving the unit and "pulled up right almost on top of [Vinet]." He used his flashlight to retrieve the packet. He was approximately 15 feet from Vinet when the object was thrown. He stated the suspects were not standing in the middle of the street but were "off the street in a parking lot area." He did not believe objects were exchanged between the three men. He could not remember how fast he was driving. When he initially saw Vinet he was not committing a crime. It was after Officer Nelson had the white packet that he arrested Vinet. At the time the packet appeared to contain a controlled dangerous substance based on his experience.
The trial judge denied the motion to suppress the evidence and stated his reasons as follows:
[T]he Court finds that based on the testimony of the police officers that this was a high-crime area, it was a very early hour of the morning with people congregating around on the street and upon approach of the car, people tended to disburse; one of the men rode off on a bike and the other two walked away, and at that time the police did observe and the testimony was they had sufficient light to observe an object being tossed by the defendant, which at that time gave them sufficient probable cause to detain the defendant and, consequently, the Court feels that the evidence obtained was not unconstitutionally obtained and the State has shown its admissibility and I deny the motion to suppress.
Counsel for defendant argues "the abandonment of the contraband was clearly a result of an unfounded imminent detention [and] the property recovered was illegally seized and should have been suppressed." Counsel correctly noted that the officers testified the three people were only standing in the street and no criminal activity was observed by the officers.
In State v. Belton, 441 So.2d 1195, 1199 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984) our Louisiana Supreme Court considered the seizure of abandoned property. It held at 1199:
When police officers make an investigatory stop without the legal right to do so, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. If, however, property is abandoned without any prior unlawful intrusion into a citizen's right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person's custodial rights. It is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the "right to be left alone" is violated, thereby rendering unlawful any resultant seizure of abandoned property. [citations omitted].
In the instant case the officers' testimony was credited by the trial judge. The officers admitted following Vinet prior to the seizure. "While the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure." [footnote and citations omitted]. Michigan v. Chesternut, 486 U.S. 567, 108 S.Ct. 1975, 1980, *1202 100 L.Ed.2d 565 (1988). In Michigan, officers followed the defendant in a patrol car with no sirens or flashing lights. The defendant discarded packets containing pills. We follow the Michigan court reasoning:
Without more, the police conduct herea brief acceleration to catch up with respondent, followed by a short drive alongside himwas not "so intimidating" that respondent could reasonably have believed that he was not free to disregard the police presence and go about his business. The police therefore were not required to have "a particularized and objective basis for suspecting [respondent] of criminal activity," in order to pursue him. [citations omitted].
108 S.Ct. 1975 at 1981.
Accordingly, we find no error in the denial of the motion to suppress the evidence. We also find no errors patent.
For the reasons stated, the conviction and sentence are affirmed.
AFFIRMED.