KLIEBERT, Chief Judge.
In this criminal matter, defendant Simco Vallee appeals her misdemeanor conviction of possession of marijuana, first offense, a violation of LSA-R.S. 40:966 C. Defendant was charged by a bill of information filed by the Jefferson Parish District Attorney on January 22,1993. At the March 12,1993 arraignment, defendant pled not guilty.
Defendant filed a motion to suppress evidence, which was heard in conjunction with the trial on May 5, 1993. After considering the evidence, the trial judge denied defendant’s motion to suppress and found the defendant guilty as charged, with possession of marijuana. Defendant was sentenced and this appeal results.
Initially, we note that because the defendant was convicted of a misdemeanor, her proper remedy was to seek review of the conviction by writ application under this Court’s supervisory jurisdiction. State v. Cologne, 562 So.2d 24 (5th Cir.1990). Although this case has been lodged and docketed as an appeal, in the interests of judicial economy, we will review this misdemeanor conviction under our supervisory jurisdiction.
Defendant argues that the trial court erred in denying the motion to suppress evidence. Also assigned as error are any and all errors patent on the face of the record. The State asserts that the trial court’s results are correct and denies any errors patent.
*1264 Regarding the events leading to defendant’s arrest, Deputy John Simmons of the Jefferson Parish Sheriffs Office testified:
On routine patrol in an area of — high crime area. As I approached the corner of Cornell and Swathmore, I observed Ms. Simeo with a group of Negro males, acting suspiciously on the corner, due to the fact that the area is high crime area, and there’s a lot of break-ins. I stopped, questioned them with their — why they were in the area, what they were doing in the area. Upon questioning Ms. Simeo — well, upon questioning the other Negro males, I observed Ms. Simeo reach under her shirt and remove a clear plastic bag and toss it to the ground.
Deputy Simmons retrieved the bag and found that it contained a green leafy substance. A field test of the substance proved it was marijuana, and defendant was thereafter arrested.
After the testimony of Deputy Simmons, the State submitted the matter on the motion to suppress. The trial court denied the motion and the State introduced the marijuana into evidence, and rested its ease.
The defense’s case consisted of the testimony of defendant, Vallee, who told a much different story than Officer Simmons. According to Ms. Vallee, she and her companions were riding in a car when the police ordered them to pull over, get out of the car, and walk home. She said she was searched, and then as she was walking" home, they came up, put her against the car, and threw weed in her face. She was then arrested.
On cross examination, Vallee denied that she had been in possession of marijuana the night she was arrested.
After defendant’s testimony, the defense rested and the state submitted. The trial court found Ms. Vallee guilty as charged and upon waiver of sentencing delays, duly sentenced her.
The defendant argues that the officer’s actions in approaching the group to detain them for questioning was patently illegal and therefore, the abandonment of the marijuana was illegally induced. The State argues that the officer had the requisite probable cause to stop and question Ms. Val-lee’s companions because they were in a known high crime area and the policeman had had previous encounters on the street with them.
In State v. Belton, 441 So.2d 1195, 1198-1199 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984), the Louisiana Supreme Court summarized the applicable law as follows:
The fourth amendment to the federal constitution and art. 1, section 5 of the Louisiana Constitution protects people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.Code Crim.P. art. 215.1, as well as by both state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389 (La.1983); State v. Chopin, 372 So.2d 1222 (La.1979). We have held that reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual’s right to be free from governmental interference. The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Andrishok, supra; State v. Chopin, supra.
The totality of the circumstances, “the whole picture,” must be considered in determining whether reasonable cause exists. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Although flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop, State v. Chopin, supra; State v. Truss, 317 So.2d 177 (La.1975), this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. State *1265 v. Williams, 421 So.2d 874 (La.1982); State v. Wade, 390 So.2d 1309 (La.1980).
The 'purpose of the fourth amendment, however, is not to eliminate all contact between the police and the citizenry. Police officers do not need probable cause to arrest or reasonable cause to detain each time they attempt to converse with or approach a citizen. As long as the person remains free to disregard the encounter and walk away, there has been on intrusion upon that person’s liberty or privacy which would require some particularized and objective justification ■under the fourth amendment. United State v. Men-denhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); State v. Williams, supra; State v. Lanter, 391 So.2d 1152 (La. 1980). (Emphasis added).
In State v. Perkins, 609 So.2d 868 (5th Cir.1992), this Court found that there was no seizure or detention of defendant by officers when they drove their car into a parking lot where defendant stood. When the police cruiser pulled in, the officers saw defendant drop three rocks of crack cocaine. They then detained the defendant who was arrested and ultimately convicted of possession of cocaine. The court recognized that the police officers’ actions were not so intimidating as to constitute a seizure, and that property abandoned without any prior unlawful intrusion into a citizen’s right to be free from governmental influence may be lawfully seized.
The mere presence of a police officer, in close proximity to a suspect, does not, standing alone, constitute an investigatory stop. State v. Vinet, 576 So.2d 1200 (5th Cir.1991). In Vinet, the court found that property abandoned while a suspect was being followed by a police car, was lawfully seized because being followed by a police ear does not alone constitute a seizure. Other cases have found that property abandoned during an active chase by police was lawfully seized, because defendant made no submission to police authority. State v. Gray, 589 So.2d 1135 (5th Cir.1991), quoting California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).
The recent Louisiana Supreme Court case, State v. Tucker, 619 So.2d 38 (La.1993), original opinion adopted on rehearing, 1993 WL 427306 (La. October 18,1993) recognized that the Fourth Amendment only protects individuals from “actual” stops by law enforcement officers whereas the La.Const. Art. 1, Sec. 5 also protects individuals from “imminent actual stops.” In determining whether an “actual” stop of an individual is “imminent,” the court focused on the degree of certainty that the individual will be “actually stopped” as a result of the police encounter, i.e., the extent of police force employed in attempting the stop. The court enumerated the following non-exhaustive list of factors to aid in assessing the extent of police force employed and determining whether that force was virtually certain to result in an “actual stop” of the individual: 1) the proximity of the police in relation to the defendant at the outset of the encounter; 2) whether the individual has been surrounded by the police; 3) whether the police approached the individual with their weapons drawn; 4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; 5) the location and characteristics of the area where the encounter takes place; and 6) the number of police officers involved in the encounter.
In light of Belton and Tucker, we find that at the time defendant disposed of the marijuana, the police officer had not effected an actual or imminent unlawful detention. Under Belton, it is clear that Officer Simmons had the right to approach the individuals and converse with them. Deputy Simmons testified that it was Ms. Vallee’s companions he was questioning, not her. When he questioned the three black males as to their reasons for being there, the defendant reached under her shirt, removed a clear plastic bag containing marijuana and tossed it to the ground. There was no evidence that the Officer detained any of the group, or that they were not free to leave at any time. In fact, the defendant was the only one arrested, and the remaining individuals were apparently free to leave. At the time she abandoned the marijuana, defendant had not been detained, was not even the subject of the officer’s questioning, and thus her right *1266 to privacy had not been unlawfully violated. Therefore, the seizure of the marijuana was not unlawful, and the motion to suppress was properly denied.
A review of errors patent reveals the following discrepancies in the defendant’s sentence. The transcript indicates that the judge sentenced defendant as follows:
The Court sentences the defendant in this case to pay a fine of one hundred dollars, or serve thirty days in default. Thirty days in Jefferson Parish prison suspended, six months inactive probation, condition of probation, one hundred dollars to Indigent Defender Board, cost of court, thirty days in default. Article 894.1, subsection B-7.
(R., p. 42).
The minute entry (R., p. 4) shows that the following sentence was imposed.
DEFENDANT SENTENCED THIS DAY.
$100.00 FINE OR SERVE (30) DAYS IN DEFAULT
THIRTY (30) DAYS IN THE JEFFERSON PARISH CORRECTIONAL CENTER-SUSPENDED
SIX (6) MONTHS INACTIVE PROBATION
PAY $100.00 TO THE INDIGENT DEFENDER BOARD (IDB)
PAY CLERK’S FEE $25.00 SHERIFF’S COSTS $12.50,
IDB FEE $17.50,
DEPUTY FEE $50.00, D.A.’S FEE $10.00, CORONER’S FEE $10.00, VICTIM’S FEE $7.50
DEFENDANT HAS NINETY (90) DAYS TO PAY COURT COST
IF IN DEFAULT THIRTY (30) DAYS
The commitment (R., p. 15) shows that defendant was sentenced to thirty (30) days in parish prison. The sentence was suspended and defendant was placed on inactive probation for six months, subject to the following special conditions:
$100.00 FINE OR SERVE THIRTY (30) DAYS IN DEFAULT .
PAY $100.00 TO THE INDIGENT DEFENDER BOARD (IDB)
PAY CLERK’S FEE $25.00, SHERIFF’S COST $12.50,
IDB FEE $17.50,
DEPUTY FEE $50.00, DA’S FEE $10.00
CORONER’S FEE $10.00 VICTIM’S FEE $7.50
DEFENDANT HAS NINETY (90) DAYS TO PAY COURT COSTS
IF IN DEFAULT THIRTY (SO) DAYS IN JPCC
As can be seen by the foregoing discussion, the commitment shows that the fine, court costs, and IDB fee were imposed as special conditions of probation; the minute entry reflects that no special conditions were imposed, and the transcript shows that the IDB fee and court costs were imposed as special conditions..
Presumably, because of the above discrepancies in the minute entry, transcript, and commitment, the state shows in brief that it believes the defendant to have been sentenced to pay $100.00 OB serve 30 days in the Jefferson Parish prison, which sentence was suspended. The defendant was then placed on 6 months inactive probation on the condition she pay $100.00 to the Indigent Defender Board and the various enumerated costs and fees. Because the intended sentence imposed is clear from the transcript, there is no need to remand to the trial court for resentencing. However, we note that the trial court imposed jail time upon the defendant, an indigent,[1] in default of her failure to pay her fines. It is well-settled law that an indigent defendant may not be sentenced to additional jail time in default of payment of fines or costs. State v. Conley, 570 So.2d 1161 (La.1990). We therefore amend the sentence to delete that portion which imposes additional imprisonment in default of payment of fines or costs. See State ex rel. Gant v. State, 576 So.2d 517 (La.1991); State v. Boynton, 537 So.2d 821 (5th Cir.1989).
Generally, where there are discrepancies between the minute entry and the transcript, the transcript should prevail. State v. Lynch, 441 So.2d 732 (La.1983); State v. Lockett, 542 So.2d 670 (5th Cir.1989).
Accordingly, we affirm the defendant’s misdemeanor conviction of possession of marijuana, and amend the sentence by deleting the portion of the sentence that imposes additional incarceration upon default of payment of fines or costs.
*1267 AFFIRMED IN PART; AMENDED IN PART.

. Since defendant was represented by the Indigent Defender Board at all times, her status as an indigent has been established. State v. Clark, 593 So.2d 975 (5th Cir.1992).