WICKER, Judge.
| ¡This appeal arises from a conviction pursuant to La.R.S. 14:95.1, possession of a firearm by a felon. Subsequent to the jury’s finding Johnnie Williams, the defendant, guilty as charged, the trial judge sentenced him to eight years at hard labor without benefit of parole, probation or suspension of sentence. Williams was given credit for time served. He now appeals and assigns as error the denial of his motion to suppress the firearm and errors patent. We affirm the conviction and sentence.
At the suppression hearing and the trial, the state presented the testimony of narcotics agents John Ladd and Emile Larson. The defense counsel argues in brief that the testimony of these agents indicates the defendant was faced with an imminent and legally baseless detention such that he was provoked into revealing and discarding the firearm. However, the testimony reveals that the firearm was abandoned by Williams prior to any imminent or actual stop by the officers.
Both agents testified that on the night in question they were assigned to investigate complaints of narcotics activity in the area in which the defendant was observed, a known location of drug trafficking. They were in an unmarked police car. Larson was driving the car with Ladd as a passenger.
Ladd testified that when they pulled into the parking lot of the apartment complex he saw a group of four or five people who 12were loitering. He saw the defendant walking toward the group. When Williams approached a stairwell he discarded a black gun and a tan holster. Williams discarded the weapon when he saw the vehicle. When Ladd saw Williams he was forty feet away. Prior to pulling into the parking lot they were traveling fifteen to twenty miles an hour. Williams was arrested after all of the subjects were interviewed. Ladd stated that no one was stopped nor arrested before the weapon was discarded.
Ladd explained they pulled up because they suspected criminal activity. Based on his experience a congregation of males in this drug trafficking area was usually consistent with the selling and distribution of narcotics. They had received complaints from citizens about the sale of crack cocaine and the firing of guns. When they pulled into the parking lot Williams had joined the others. He and Larson, who were in jackets with “police” written on the back, walked over to the group and identified themselves as police officers. They asked how they were and advised them they were working the area for narcotics. They asked for identification.
Ladd stated Williams identified himself and that a warrants check under that name was negative. Ladd was occupied at this time watching the gun to ensure that no one would pick it up. He was uncertain whether the subjects , had been frisked by Larson as well as whether the frisking was before or after Williams’ arrest. He asked if they had weapons or dope. They denied having any.
Ladd testified that Williams had advised them he had been arrested for minor violations. His' information was checked again and again was negative. Williams became nervous and was placed on his knees and restrained with handcuffs. At this point he was not free to leave. Ladd retrieved the weapon.
Ladd stated he was present during Larson’s pat down but he was watching the gun. He did not remember whether they were made to lean against the car during the pat down. He stated they would have been allowed to leave at this time.
ULarson testified as follows. He pulled into the parking area when he saw a large group of subjects standing at the corner of a building around a vehicle. He observed Williams move swiftly toward them. By the time he left his vehicle Williams was just passing the group. He grabbed all of them together and put them on the car while placing Williams on the wall. He asked them for identification. He explained he approached them in this manner to prevent them from running and discarding evidence. At this point no one was free to leave. He ran checks on them. By this time Ladd walked up with the discarded weapon. Williams was subsequently arrested. He did not see Williams throw anything on the ground.
*649 He explained that after Williams was stopped Ladd informed him he had seen him drop a gun by the stairwell. It was then that Williams was physically restrained by his kneeling and being handcuffed.
Larson stated he was driving fifteen to twenty miles an hour prior to pulling into the lot. He stated he may have sped up when he saw the group of subjects who were congregated.
It was clear from the testimony that Williams was actually stopped and not free to leave when Larson placed him on the wall and asked him for identification. The testimony also establishes the firearm was abandoned by Williams prior to the stop. It was abandoned when the officers were pulling into the parking lot in the unmarked vehicle when Williams was 40-feet away. At that point Williams was free to disregard the presence of the unmarked vehicle.
We do not consider the presence of an unmarked car which may have sped up when Williams was seen dropping the gun at a distance of 40-feet away to be an indication of an imminent stop. Even assuming it were somewhat intimidating, we have followed Michigan v. Chesternut, 486 U.S. 567, 574, 108 S.Ct. 1975, 1980, 100 L.Ed.2d 565 (1988) and held:
“While the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, | constitute a seizure.” [quoting Michigan, 486 U.S. 567, 574, 108 S.Ct. 1975, 1980].
State v. Vinet, 576 So.2d 1200, 1201 (La.App. 5th Cir.1991).
Furthermore, if “property is abandoned without any prior unlawful intrusion into a citizen’s right to be free from government interference, then such property may be lawfully seized.” State v. Belton, 441 So.2d 1195, 1199 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Additionally,
In such cases, there is no expectation of privacy and thus no violation of a person’s custodial rights. It is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the “right to be left alone” is violated, thereby rendering unlawful any resultant seizure of abandoned property, [citations omitted].
Vinet at 1201.
In Vinet the officers followed the defendant in a partially marked police car. Vinet, a pedestrian, threw a white object in the air which was later found to be cocaine. Vinet was approximately fifteen to twenty feet away when the officer saw him throw the object. We affirmed the trial court’s denial of his motion to suppress.
Therefore, we find no error in the denial of the motion to suppress. We have also examined the record for errors patent and have found none.
Accordingly, for the reasons stated, the defendant’s conviction and sentence are affirmed.

AFFIRMED.