733 So.2d 730 (1999)
STATE of Louisiana
v.
Noah POCHE.
No. 99-K-0039.
Court of Appeal of Louisiana, Fourth Circuit.
May 5, 1999.
*731 Harry F. Connick, District Attorney, Robin Pittman, Assistant District Attorney, New Orleans, Louisiana, Attorneys for the State.
Court composed of Judge WILLIAM H. BYRNES III, Judge JOAN BERNARD ARMSTRONG, and Judge DENNIS R. BAGNERIS Sr.
BYRNES, Judge.
The State requests a review of the trial court's ruling which granted the defendant Noah Poche's motion to suppress. We reverse and remand.

STATEMENT OF THE CASE
On September 4, 1998, in case # 401-207 the defendant was charged with one count of possession of diazepam. On the same date, he was charged in case # 401-224 with one count each of possession of marijuana, first offense, and possession of drug paraphernalia. He pleaded not guilty to both counts. His motion to suppress the *732 evidence was heard on October 2 and granted on October 30, 1998. The State's writ application followed.

FACTS
At approximately 10:30 p.m. on April 18, 1998, criminal sheriffs deputies were on routine patrol near the French Quarter. As they drove down Basin Street, they observed the defendant Noah Poche standing on the sidewalk at the corner of Basin and Conti Streets, next to the St. Louis Cemetery. Poche was standing with his back toward them, facing the Iberville Housing Project. The deputies made a U-turn on Basin Street and parked across the street from Poche, watching him for a time. The deputies drove around again so that they approached Poche from the back. Deputy Renaudin testified that they decided to investigate Poche because he was a white man standing near the project, and they were concerned that he might be lost.
The deputies turned on their flashing bar lights and pulled up next to Poche, diagonal to the corner. Poche reached into his back pocket, then turned around and saw the deputies' car had pulled up to him. Deputy Renaudin stated that he was about five feet from the defendant when the deputy got out of the passenger side of the patrol car. When he got out of the patrol car, Deputy Renaudin said he didn't remember either deputy saying anything to Poche until Poche reached for his back pocket. At that time, Deputy Renaudin said, "I think when he reached into his pocket, we said a lot to him." Deputy Renaudin stated that they believed that the defendant had a weapon on him. At that point they yelled at the defendant and Deputy Renaudin testified that Deputy Benton "was on the driver's side, and he was over the hood of the car with his weapon drawn." Poche dropped an object from his pocket onto the ground. The deputies detained Poche and retrieved the object, which was a small "purse-like object" containing a small plastic bag of marijuana and a small plastic bag of a green powder. The deputies arrested Poche and advised him of his rights, and incidental to his arrest they found some rolling papers in his pocket. As the deputies were transporting Poche to the police station, they tried to identify the green powder. Poche then volunteered that the green powder was valium.
The State argues that the drugs were abandoned without an interference with the defendant's privacy rights, and the deputies could lawfully seize the abandoned purse.
If property is abandoned without any prior unlawful intrusion into a citizen's right to be free from governmental interference, then such property may be lawfully seized. State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208. In such cases, there is no expectation of privacy and, thus, no violation of a person's custodial rights. State v. Andrishok, 434 So.2d 389 (La.1983).
At issue in the present case is whether Poche abandoned the property as a result of an actual stop or an imminent actual stop, where the officers involved must have at least reasonable suspicion to support the stop.
"Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819.
In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy that the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir.1992), *733 affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir. 1993), writ denied, 626 So.2d 1177 (La. 1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
To determine whether an actual stop of an individual is imminent, the following factors may be useful in assessing the extent of police force employed and in determining whether that force was virtually certain to result in an actual stop of an individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. State v. Tucker, 626 So.2d 707, 712-713 (La.1993), opinion reinstated on rehearing by 626 So.2d 720 (La.1993).
In Tucker, id., acting on repeated complaints of drug-related activity, the police conducted a drug sweep in certain highcrime areas. The sweep began when approximately ten to twelve marked police vehicles carrying 20 to 30 officers converged. When two men noticed the approaching police cars, they quickly broke apart and began to leave. Officer Wilson stopped his car and began to get out while simultaneously ordering the two men to "halt" and "prone out." One man lay down immediately. The other, Tucker, moved several steps and tossed away a plastic bag. He then lay down. The Louisiana Supreme Court noted:
.... while the Fourth Amendment only protects individuals from "actual stops" by law enforcement officers, [California v.] Hodari D, [499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)], our constitution also protects individuals from "imminent actual stops." Therefore, it becomes incumbent upon us to now determine what constitutes an "actual stop" and an "imminent actual stop" as those terms were used in Belton.

... We agree with the United States Supreme Court, an "actual stop" of an individual has not occurred when a police officer yells "Halt!" at a fleeing form which continues to flee. Thus, we hold that an individual has not been "actually stopped" unless he submits to a police show of authority or he is physically contacted by the police.

Tucker, 626 So.2d at 712. [Emphasis added.]
The Louisiana Supreme Court stated that it "could not conclude an actual stop of Tucker was "virtually certain" to occur at the time he abandoned the evidence. Thus, at the time Tucker abandoned the marijuana he had not been unconstitutionally seized." Id., 626 So.2d at 713. The Supreme Court upheld Tucker's conviction.
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir. 1991), writ denied, 578 So.2d 131 (La. 1991). Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983), certiorari denied, Belton v. Louisiana, *734 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992); State v. Preston, 569 So.2d 50 (La.App. 4 Cir.1990).
In State v. Huntley, 97-0965, p. 3 (La.3/13/98); 708 So.2d 1048, 1049, the Louisiana Supreme Court stated:
In making a brief investigatory stop on less than probable cause to arrest, the police "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore "articulate something more than an `inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only "`some minimal level of objective justification....'" Sokolow, 490 U.S. 1, 7, 109 U.S.[S.Ct.] at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the "totality of the circumstancesthe whole picture," giving deference to the inferences and deductions of a trained officer that might well elude an untrained person. Cortez, 499[449] U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police `not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' Id. [Emphasis added.]
The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but, rather whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. McKinney, 93-1425 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120, writ denied 97-1339 (La.12/19/97), 706 So.2d 444; State v. Lambright, 525 So.2d 84 (La.App. 3 Cir. 1988), writ denied 530 So.2d 83 (La.1988). Deference should be given to the experience of the policemen who were present at the time of the incident. State v. Short, supra. A certain look or gesture may not mean anything to the ordinary person; however, a policeman has sound judgment based on long experience to interpret these acts. An officer should react for his safety under the conditions and events as they occur.
In State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989, the police officers' observation of the defendant running away from their marked police car while holding his waistband, as if he was supporting weapon or contraband, was sufficient to raise reasonable suspicion that the defendant either was engaging or was about to engage in criminal activity, thus justifying the investigatory stop. The Supreme Court did not mention whether the police articulated that they were in a high crime area.
In State v. Ganier, 591 So.2d 1328 (La. App. 4 Cir.1991), in which the police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The juvenile saw the officers, turned "suspiciously", began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended. This court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
... Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of *735 fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there.

State v. Ganier, 591 So.2d at 1330. [Emphasis added.]
In the present case the trial court referred to Michigan v. Chesternut, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), which was a precursor to California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). In Chesternut, the defendant began running when he saw a police car coming toward him. The officers continued following him and eventually pulled abreast of him, keeping in pace with him while he ran. The defendant threw down some drugs, which the officers seized after stopping him. In its ruling on the admissibility of the drugs, the United States Supreme Court found that the officers' actions were not a seizure under the Fourth Amendment. The Court noted that the officers did not activate their siren, did not command the defendant to stop, and did not display any weapons. Under Hodari D., the officers' actions in Chesternut would not have been a seizure because there was no actual stop of the defendant, nor did the defendant submit to the officers' authority prior to dropping the drugs.
In the present case the trial court found that an atmosphere was created where at least a temporary detention was imminent. The trial court held that the deputies did not have reasonable suspicion for an actual or an imminent stop so that none of the evidence was admissible.
In Chesternut, supra, the United States Supreme Court did not find that there was an actual stop or that a stop was imminent although the police were following the defendant in a police car when he threw down the drugs while running away. The evidence was admissible.
In Tucker, supra, there were ten to twelve police vehicles who approached a high crime area. The subjects noticed the approaching police cars and ran. The officer stopped his patrol car and yelled at two subjects to "halt" or "prone out." The defendant then moved several steps, tossed the contraband, and lay down. The Louisiana Supreme Court found that an actual stop was not virtually certain to occur at the time that Tucker abandoned the evidence.
In the present case the patrol car approached Poche with its bar lights flashing. It depends on the circumstances to determine if the flashing lights indicate that an actual stop was imminent. The police can flash their lights to show that they are present on the street without having the intent to detain someone. It would be permissible for the deputies to drive up to the defendant to see if he needed help, and there would be no imminent actual stop. When the patrol car stopped in this case, Deputy Renaudin was five feet away from the defendant when the deputy opened his car door. At that time, the two deputies had not detained Poche, and based on Chesternut and Tucker, under the circumstances where the police flashed their lights and pulled up without telling Poche anything, an actual stop was not virtually certain to occur. The deputies' actions did not constitute an actual stop or an imminent actual stop.
At that point, Poche reached for his back pocket. Giving deference to the deputies' training and for the deputies' safety, it was reasonable for Deputy Benton to draw his gun over the hood of the car when Poche reached for his back pocket and could be reaching for a weapon. At that time, under the circumstances, where Poche was standing and looking into the Iberville Project at approximately 10:30 p.m., and where he looked as if he could be reaching for a weapon, the deputies had reasonable suspicion to make an investigatory stop "where the police need have only some minimal level of objective justification." *736 Huntley, supra, 708 So.2d at 1048. This is not a case of a man merely standing on the street corner who is detained by the police simply because he was there. There was no invasion of Poche's privacy when Poche dropped the contraband because there was reasonable suspicion to justify an investigatory stop under the circumstances. Further, although the deputies had reasonable suspicion to make an investigatory stop, under the guidelines of Chesternut and Tucker, an actual stop was not virtually certain to occur at the time that Poche abandoned the contraband. Poche had not been unconstitutionally stopped, and the seizure of the abandoned contraband was valid.
Based on the valid seizure of the abandoned contraband, the deputies had probable cause to arrest Poche. The seizure of the rolling papers found in Poche's pocket was proper pursuant to a valid search incidental to Poche's arrest. Poche's statement, that the green powder was valium, is admissible because the deputy had given the defendant his Miranda rights at the time of Poche's arrest, and Poche voluntarily made the statement while he was being transported to the police station.
Accordingly, the ruling of the trial court is reversed, and the defendant's motion to suppress is denied. The case is remanded for further proceedings.
REVERSED AND REMANDED.