hBAGNERIS, Judge.
Relator seeks to reverse the trial court’s ruling granting the defendant’s motion to suppress. Relator contends the trial court erred in finding no probable cause and granting the motion to suppress the evidence. We agree.

STATEMENT OF THE CASE

On March 14, 2001, the State filed a bill of information charging the defendant with possession of cocaine, a violation of La. R.S. 40:967(0(2). On March 19, 2001, he pleaded not guilty. On April 20, 2001, the hearing on the motions was held. The trial court found no probable cause, granted the motion to suppress evidence, and ordered the defendant’s release as to this case only. The State filed a notice of intent to file for writs, which was granted, by the trial court.

STATEMENT OF THE FACTS

At the April 20, 2001 hearing Officer Darren Brazley was the only witness. The officer testified that on January 26, 2001, at about 7:30 p.m. he was' sitting at the intersection of Warrington and Mirabeau. He was looking northbound at Warrington. Officer Brazley stated that the area was a high crime area with a lot of armed robberies and car burglaries. The officer “observed Eugene Allen walk southbound on Warrington towards [sic] Mirabeau real close to the vehicles, you know, his eyes moving to the right to the vehicle side.” Officer Brazley said that the defendant was looking toward the parked vehicles and was walking very close to them. Officer Brazley “moved in on him [defendant], turned on the blue strobe light, and stopped him.” The officer was driving an unmarked police car, a white Crown Victoria, and he put the blue light on the dashboard. According to the officer, when he “hit the blue light,” the defendant discarded the white towel in his | ¡¡left hand. After the defendant discarded the towel, he took three or four steps backward very rapidly. The officer exited his car, and showed his badge. He said: “ ‘Freeze.’ He froze.” Officer Brazley ordered the defendant to the front of the vehicle and told him to place his hands on the hood of the car. The defendant complied. The officer then “retrieved the towel which was about two to three feet east of him.” He looked into the towel and found a chrome tube, a metal pipe with a burned screen inside and an unburned screen. Officer Brazley thought that he had found a crack pipe. The officer advised the defendant that he was under arrest for drug paraphernalia, advised him of his rights, handcuffed him, and transported him to the Third District. The crime lab analysis was positive for cocaine.
On cross-examination Officer Brazley stated that he was assigned to the special section on armed robberies and aggravated batteries and was on proactive patrol that night in an unmarked unit. He had been parked facing north on Warrington for about five minutes when he saw the defendant. The cars were parked in diag *95 onal spaces (parallel to each other) at the apartment complex. Some were parked with their front to the curb, and others backed into the parking slots. The defendant was not on the sidewalk. He was “walking along the curb right next to the vehicle.” The officer answered negatively when he was asked if the defendant went in and out between the vehicles. He acknowledged that the curb was public property. When Officer Brazley was asked if he saw any tools on the defendant, he said that he saw the white towel twisted in his hand. When he was asked whether the defendant stopped and checked door handles, he said: “I didn’t give him time.” The officer observed the defendant, who was walking slowly, for about thirty seconds. The fact that the defendant was walking “real slow” aroused the officer’s suspicion. Officer Brazley conceded that he seized no burglary tools from the defendant, saw no broken glass in any of the parked cars, and had no [ ^confidential information relating to the defendant. When the officer was asked if he knew the defendant from prior incidents, he said that the Allen/Sumpter area located about three blocks away was known for drugs, and a club had been closed because of the murders and drugs there. When Officer Brazley was asked about the defendant, he indicated that the defendant had “[b)een stopped there numerous amount [sic] of times”. However, then Officer Brazley said that he had never arrested the defendant, and he clarified that he meant that there had been numerous drug and gun arrests in that area. The officer said that he did not know the defendant from the area or by reputation.

DISCUSSION

The State argues that the evidence was properly seized because: 1) the defendant was not stopped (and no stop was imminent) at the time that he discarded the towel; or alternatively, 2) the police officer had reasonable cause to stop the defendant.
This Court discussed evidence seized as a result of an imminent stop in State v. Washington, 00-0619, pp. 2-3 (La.App. 4 Cir. 1/31/01), 778 So.2d 1262,1264-65:
It has long been held that property cannot be seized legally if it was abandoned pursuant to an infringement of the person’s rights. However:
if ... property is abandoned without any prior unlawful intrusion into a citizen’s right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person’s custodial rights.
State v. Belton, 441 So.2d 1195, 1199 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). See also State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208; State v. Tucker, 626 So.2d 707 (La.1993), opinion reaffirmed and reinstated on rehearing by 626 So.2d 720 (La.1993); State v. Dennis, 98-1016 (La.App. 4 Cir. 9/22/99), 753 So.2d 296; State v. Laird, 95-1082 (La.App. 4 Cir. 5/8/96), 674 So.2d 425. As noted by the Court in Britton: “the police do not need probable cause to arrest or reasonable suspicion for an investigatory stop every time they approach a citizen in a public place.” Britton, 93-1990 at p. 2, 633 So.2d at 1209.
An “actual stop” occurs when an individual submits to a police show of authority or is physically contacted by the police. State v. Tucker, supra. An “imminent actual stop” occurs when the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, *96 an actual stop of the individual is virtually certain. Id. The Supreme Court listed the following factors to be considered in assessing the extent of police force employed in determining whether that force was “virtually certain” to result in an “actual stop” of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. Id. An actual stop is imminent “when the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the individual is virtually certain.” Tucker, 626 So.2d at 712.
If a defendant abandons property as a result of an actual stop or an imminent actual stop, the officers involved must have at least reasonable cause or suspicion to support the stop. Police officers may stop a person whom they “reasonably believe is committing, has committed, or is about to commit an offense.” La.C.Cr.P. art. 216.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
In making a brief investigatory stop on less than probable cause to arrest, the police “ ‘must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.’ ” State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore articulate something more than “ ‘inchoate and unparticularized suspicion’ or “hunch.” ’ ” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed. 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only “ ‘some minimal level of objective justification....’” Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the “totality of the circumstances — the whole picture,” giving deference to the inferences and deductions of a trained officer that might well elude an untrained person. Cortez, 449 U.S. at 418,101 S.Ct. at 695. The court must also weigh the circumstances known to the police “ ‘not in terms of library analysis by scholars, but as understood by those |Kversed in the field'of law enforcement.’ Id. ”
State v. Wilson, 99-2334 p. 4 (La.App. 4 Cir. 3/15/00), 758 So.2d 356 was quoting State v. Huntley, 97-0965 p. 3 (La.3/13/98), 708 So.2d 1048, 1049.
Reasonable suspicion for an investigatory stop is something less than probable cause. It must be determined under the facts of each case whether the officer had sufficient articulable knowledge of particular facts and circumstances to justify an infringement upon an individual’s right to be free from governmental interference. State v. Oliver, 99-1585 (La.App. 4 Cir. 9/22/99), 752 So.2d 911. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Belton, 441 So.2d at 1195; State v. Anderson, 96-0810 (La.App. 4 Cir. 5/21/97), 696 So.2d 105. An *97 investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be engaged in criminal activity, or there must be reasonable grounds to believe that the person is wanted for past criminal conduct. State v. Moreno, 619 So.2d 62 (La.1993). The reviewing court must look to the facts and circumstances of each individual case to determine whether an officer had sufficient facts to justify an infringement of the suspect’s rights. State v. Russell, 98-2773 (La.App. 4 Cir. 5/10/00), 764 So.2d 93; State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268. See also State v. Hughes, 99-2554 pp. 3-4 (La.App. 4 Cir. 5/31/00), 765 So.2d 423.
In Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000), the U.S. Supreme Court stated:
An individual’s presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a “high crime area” among the relevant contextual considerations in a Terry analysis. Adams v. Williams, 407 U.S. 143, 144 and 147-148, 92 S.Ct. 1921, 1922 and 1924, 32 L.Ed.2d 612 (1972).
|fiSee also State v. Ratliff, 98-0094 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160. The trial court is vested with great discretion when ruling on a motion to suppress. State v. Scull, 93-2360 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239.
In State v. Wilson, 95-0619 (La.App. 4 Cir. 6/7/95), 657 So.2d 549, three uniformed police officers were patrolling in a marked unit when they saw a group of men in a courtyard in the Desire Housing Project. They drove the car about two car lengths up onto the grass toward the men, but the lights and siren were not turned on. Wilson left the group and began walking away. When the car stopped about five feet away, Wilson dropped a pill bottle and ran away. The officers were not out of the car and had not approached with weapons drawn at the time that Wilson dropped the bottle. Two officers chased Wilson and one retrieved the pill bottle that contained crack cocaine. This Court considered the Tucker factors, found that there had been no imminent stop, and concluded that the pill bottle was lawfully seized. Id. at 551.
In State v. Poche, 99-0039 (La.App. 4 Cir. 5/5/99), 733 So.2d 730, Criminal Sheriffs deputies were on routine patrol driving down Basin Street at approximately 10:30 p.m. when they observed Poche standing on the sidewalk at the corner of Basin and Conti Streets, next to the St. Louis Cemetery. The officers observed Poche, who was standing with his back toward them and facing the Iberville Housing Project. The deputies made a U-turn on Basin Street and parked across the street from Poche for a time. The deputies drove around again so that they approached Poche from the back. The deputies decided to investigate Poche because he was a white man standing near the project, and they were concerned that he might be lost. The deputies turned on their flashing bar lights and pulled up next to Poche, diagonal to the corner. Poche reached into his back pocket, then turned around and saw the deputies’ car had pulled up to him. No deputy told Poche anything. The deputies exited' their car. Poche Preached for his back pocket. At *98 that point the deputies believed that the defendant had a weapon, and they yelled at the defendant. Poche dropped an object from his pocket onto the ground. The deputies detained Poche and retrieved the object, which was a small “purse-like object” containing a small plastic bag of marijuana and a small plastic bag of a green powder. The deputies arrested Poche and advised him of his rights; incidental to his arrest they found some rolling papers in his pocket. This Court reasoned:
In the present case the patrol car approached Poche with its bar lights flashing. It depends on the circumstances to determine if the flashing lights indicate that an actual stop was imminent. The police can flash their lights to show that they are present on the street without having the intent to detain someone. It would be permissible for the deputies to drive up to the defendant to see if he needed help, and there would be no imminent actual stop. When the patrol car stopped in this case, Deputy Renau-din was five feet away from the defendant when the deputy opened his car door. At that time, the two deputies had not detained Poche, and-under the circumstances where the police flashed their lights and pulled up without telling Poche anything, an actual stop was not virtually certain to occur. The deputies’ actions did not constitute an actual stop or an imminent actual stop.
Id. at p. 10, 733 So.2d at 735. See also State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921.[1]
In the present case Officer Brazley testified that on January 26, 2001, at about | R7:30 p.m. he was parked for about five minutes in a high crime area, where a number of armed robberies and car burglaries had occurred, when he saw the defendant slowly walking southbound on Warrington toward Mirabeau “real close to the vehicles.” The defendant was walking along the curb and looking toward the vehicles parked diagonally in spaces by an apartment complex (some with the front of the car to the curb and others with the back to the curb), “his eyes moving to the right to the vehicle side.” The officer, who was driving an unmarked car, observed the defendant for about thirty seconds. Then the officer moved in, “turned on the blue *99 strobe light, and stopped him.” When the officer hit the bine light, the defendant discarded a white towel and took three or four steps backward rapidly. The defendant had not been physically seized prior to abandoning the towel containing the cocaine pipe.
The issue then becomes whether an imminent stop occurred prior to the abandonment of the property. Under the factors enumerated in State v. Tucker, 626 So.2d at 707, there was only one police officer, and the defendant was not surrounded. Officer Brazley did not indicate his distance from the defendant when he first saw the defendant or when he exited his car. The defendant was on foot while the officer was driving a vehicle. The officer turned on the blue light and had it flashing on his dashboard. Unlike Wilson, 667 So.2d at 549, here the officer had his blue light flashing on the dashboard of his unmarked car. According to State v. Poche, 738 So.2d 730, whether flashing the blue light from a police car at a defendant on foot indicates an imminent stop depends on the circumstances. Officer Brazley clearly testified that he intended to stop the defendant. However, he did not yell to the defendant. However, there was no other reason for turning on the blue light placed on the dashboard other than the officer’s attempt to identify himself as a police officer and to detain the defendant. Under the circumstances, it appears that the stop was imminent or virtually certain; therefore, the officer needed reasonable cause to justify |9the detention. However, in light of Poche this issue requires serious consideration.
In the instant case, after reviewing the evidence, we find that the cocaine pipe was abandoned prior to a stop or imminent stop; thus, the evidence is admissible, and the trial court’s ruling granting the motion to suppress the evidence was error. Therefore, it must be reversed.
In State v. Frosch, 2000-1525 (La.App. 4 Cir. 3/14/01), 787 So.2d 336, at 11:30 p.m. the police officers observed the defendant, who was standing next to his bicycle, peering into a parked vehicle, while he was “jiggling” the door handle (checking to see if it was open). The officers were on patrol in an area where there had been a rash of car burglaries recently. Additionally, when the defendant saw the officers, he quickly pedaled away. He fled at the sight of the police officers. This Court held that the officers had reasonable cause to stop the defendant.
Unlike Frosch, the defendant here was not jiggling the door handles on the parked cars. According to the officer’s testimony, the defendant never touched the cars. Additionally, he did not run away. Officer Brazley observed the defendant walking slowly along the curb of a public street looking toward the diagonally parked cars for about thirty seconds before deciding to detain him.

CONCLUSION

Accordingly, we find that there was no imminent stop, the cocaine pipe was Improperly seized, and trial court’s decision to grant the motion to suppress was error. Therefore, the trial court’s ruling is reversed and this matter is remanded to the trial court.

WRIT GRANTED, REVERSED AND REMANDED.

. In State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, two officers were patrolling in an unmarked car in a high crime known for street level narcotic activity when they saw two men flagging down a pickup truck. As they drove closer, they saw a third man approach the passenger side of the truck. The two men were conversing with the occupants of the truck through the driver's side window. The third man, Bell, was leaning in the passenger window. As the officers’ car moved closer, one of the men saw the officers. One officer turned on the blue flashing lights on the unmarked car. The two men walked off toward the west, the truck drove off, and Bell walked off toward an alleyway. The other officer watched Bell walk away and saw him throw a brown object with a white lid onto the street. The officer ordered Bell to stop and he kept on walking. The officer then commanded Bell to stop, and he complied and moved toward the officer, who advised Bell that he was being detained for further investigation and handcuffed him. The Fifth Circuit noted that Bell threw down the cocaine before he had been either physically or verbally contacted by the officer, but that Bell was aware of the police vehicle with the blue lights flashing at the time he threw down the cocaine. The court cited State v. Williams, 94-167 (La.App. 5 Cir. 7/26/94), 641 So.2d 647, which held that the presence of an unmarked car which sped up when the defendant was seen to drop contraband was not an indication of an imminent stop and the presence of a police car driving parallel to a running pedestrian did not, standing alone, constitute a seizure. The Fifth Circuit declared that Bell abandoned the cocaine prior to any unlawful intrusion into his right to freedom from government interference. Id.